IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    Plaintiff,<br><br>    v.<br><br>JOHNS HOPKINS HEALTH SYSTEM CORPORATION<br>600 N. Wolfe St.<br>Baltimore, MD 21287<br><br>    Defendant. | Civil Action No.:<br><br>Demand for Jury Trial |

## **COMPLAINT**

Plaintiff, United States of America, respectfully alleges the following:

**INTRODUCTION**

1. The United States brings this suit to enforce Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181-89, as amended, and its implementing regulation, 28 C.F.R. pt. 36, against Johns Hopkins Health System Corporation ("Defendant" or "Johns Hopkins"). The ADA prohibits discrimination on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any private entity that owns, leases (or leases to), or operates a place of public accommodation. 42 U.S.C. § 12182(a); 28 C.F.R. § 36.201(a).

2. Between October 9, 2020 and May 11, 2023, Johns Hopkins supplemented its visitor policies, which allowed restrictions on visitors, with additional written policies to allow support persons to accompany and assist patients with disabilities. However, at times, Johns Hopkins did not follow its policies and excluded or restricted support persons for persons with

disabilities whose presence was necessary for the patients' equal access to care. This occurred repeatedly at various Johns Hopkins locations. This practice discriminated against numerous individuals on the basis of disability, in violation of the ADA.

3. The Attorney General has commenced this action based on reasonable cause to believe that Defendant has engaged in a pattern or practice of discrimination and reasonable cause to believe that a person or group of persons has been discriminated against and that such discrimination raises an issue of general public importance. 42 U.S.C. § 12188(b)(1)(B). The United States seeks declaratory and injunctive relief, compensatory damages, and a civil penalty against Defendant.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action under 42 U.S.C. § 12188(b)(1)(B) and 28 U.S.C. §§ 1331 and 1345.

5. The Court may grant declaratory relief and further necessary or proper relief pursuant to 28 U.S.C. §§ 2201 and 2202 and may grant equitable relief, monetary damages, and a civil penalty pursuant to 42 U.S.C. § 12188(b)(2).

6. Venue is proper in the District of Maryland pursuant to 28 U.S.C. § 1391, because it is where Defendant resides and where a substantial part of the events or omissions giving rise to the claim occurred.

## PARTIES

7. Plaintiff is the United States of America.

8. Defendant is Johns Hopkins Health Systems Corporation, a nonprofit healthcare system headquartered in Baltimore, Maryland. The Corporation runs Johns Hopkins' academically based health system consisting of its five main hospitals: Johns Hopkins Hospital

in Baltimore, MD; Johns Hopkins Bayview Medical Center in Baltimore, MD; Howard County General Hospital in Columbia, MD; Suburban Hospital in Bethesda, MD; and Sibley Hospital in Washington, DC.  The Corporation also includes the Johns Hopkins Community Physicians.  Johns Hopkins' hospitals and other care facilities affect commerce and are places of public accommodation.  42 U.S.C. § 12181(7)(F); 28 C.F.R. § 36.104.

## ALLEGATIONS

9. Before October 2020, Johns Hopkins facilities did not have specific policies related to support persons for patients with disabilities.  Instead, Johns Hopkins' "Family Presence and Visitor Policy" stated that all "[f]amilies are welcome 24 hours a day" subject to special considerations.

10. Beginning in October 2020, Johns Hopkins developed a policy specifically related to support persons for patients with disabilities that applied to hospitals and doctor's offices in the Johns Hopkins Health System Corporation, titled "Policy on Support Persons (Care Partners) for Patients with Disabilities during COVID-19 Public Health Emergency."  The policy stated that "Support Persons (referred to in this policy as Care Partners) may accompany, visit, and stay with patients with disabilities during their visits with health care providers."

11. According to Johns Hopkins' policy, Support Persons (referred to by Johns Hopkins as both "support persons" and "care partners," and herein as "Support Persons") included "a family member, personal care assistant, similar disability service provider, or other individual knowledgeable about the management or care of the patient who is authorized to assist the patient in making decisions."

12. The policy explained that "[t]ypes of patients that a Support Person might be appropriate for includes: patients with intellectual, or developmental disabilities, patients with

3

vision or hearing disabilities, patients with physical disabilities or limitations, and patients with neurocognitive disorders." The policy stated that "[p]atients with disabilities, regardless of diagnosis or COVID-19 symptoms, may designate up to two Care Partners (so they can take turns being with the patient), but only one may be present at any given time."

13. Johns Hopkins also had a document titled "Overview of Our Care Partner Visitation Guidelines," which referred to care partners for patients both with and without disabilities. The Guidelines explained that Johns Hopkins used four color-coded visitation risk levels—green (most open), yellow, red, and purple (most restricted)—"to determine how we can safely invite care partners to join patients during inpatient stays."

14. Generally, care partners could be restricted in some settings and under certain risk levels, but Support Persons for patients with disabilities were always permitted. For every risk level—even the most restricted purple level—the policy stated "[e]xceptions may be granted under the following circumstances: [a] patient with a disability needs assistance. Care partners may take turns being with the patient 24 hours per day, if needed. Up to two care partners may be at the bedside at a time, in private rooms."

15. Johns Hopkins has ended the use of its color system; its visitor guidelines now states that effective May 11, 2023, "[c]are partners and parents/legal guardians are welcome 24/7. One care partner can stay overnight with the patient (up to two care partners for pediatric patients or patients with a disability)."

16. Johns Hopkins' policies on Support Persons aligned with the State of Maryland's Department of Health (DOH) requirements on "Support Persons for Individuals with Disabilities," dated September 24, 2020. The DOH requirements stated, "State and federal law prohibits discrimination against individuals based on disability. In addition, the Secretary of

4

Health and the Secretary of the Department of Disabilities require all licensed Maryland hospitals, [and] related institutions . . . to adopt policies allowing support persons for individuals with disabilities to stay with those persons during visits to health care providers."

17. Johns Hopkins' policies on Support Persons also aligned with the Center for Disease Control's (CDC) best practices for limiting the flow of individuals into healthcare settings. *See, e.g.*, *Interim Infection Prevention and Control Recommendations for Healthcare Personnel During the Coronavirus Disease 2019 (COVID-19) Pandemic*, archived at https://perma.cc/5GMG-HC35 (last visited May 24, 2024). The CDC explicitly recognized that any limitations on "visitors" in healthcare facilities should not apply to "those essential for the patient's physical or emotional well-being and care (e.g., care partner, parent)." *Id.*

18. Despite the existence of these written policies purporting to allow Support Persons for patients with disabilities, Support Persons were excluded or restricted from various Johns Hopkins locations.

19. Examples of incidents involving Johns Hopkins excluding or restricting Support Persons include, but are not limited to, the following:

   a. Person A, a young adult with intellectual disabilities, was hospitalized at a Johns Hopkins hospital after a suicide attempt. During her admission to the Emergency Department (ED) and discharge from the psychiatric unit, Johns Hopkins excluded her Support Person—her mother—from providing assistance. As a result, Person A did not understand what was happening during crucial parts of her hospitalization, felt anxious, overwhelmed, and confused, did not understand the discharge instructions and so could not follow all of them, and she experienced significant distress.

5

    b. Person B, who is hard of hearing, visited a Johns Hopkins ED for pain because of a bacterial infection. Johns Hopkins tried to exclude her Support Person—her wife—who provides communication assistance by repeating things more clearly. Although Person B's wife was eventually allowed to accompany her, Johns Hopkins' staff repeatedly challenged Person B's disability and her need for assistance, including by asking her for an "ADA card" as proof of her disability. This caused Person B significant distress, and she fears facing this type of experience again, especially in an emergency health situation.

    c. Person C, an elderly woman with dementia, visited a Johns Hopkins ED for a head injury. Johns Hopkins excluded her Support Person—her daughter—from assisting the patient to relay basic information to aid in her treatment and from communicating what was happening to the patient. As a result, Person C was extremely confused and agitated. Person C's injury began bleeding profusely after Person C returned home, requiring her to visit a second hospital, where she again received treatment for the wound. Person C's support person was allowed to accompany her at the second hospital. In addition, Person C was terrified and required sleep medication for weeks following her hospital visit due to her distress.

20. The incidents described in the immediately preceding paragraph resulted in unequal access to healthcare for Persons A, B, and C.

21. When Persons A's Support Person complained in writing about the discrimination they faced, Johns Hopkins responded that there was no wrongdoing.

22. Johns Hopkins does not provide adequate training for staff on patients with

disabilities or their Support Persons, including on Johns Hopkins' own policies regarding patients who need the assistance of Support Persons.

23. Persons A, B, and C, and numerous other individuals aggrieved by Johns Hopkins' exclusion or restriction of Support Persons, meet the ADA's definition of disability. 42 U.S.C. § 12102; 28 C.F.R. § 36.105 (specifically recognizing physical conditions, neurological conditions, and mental or psychological disorders as "physical or mental impairments" that, if they substantially limit one or more major life activities of an individual, qualify the individual as "disabled" under the ADA).

24. Johns Hopkins' exclusion of Support Persons has resulted in unlawful discrimination. It has jeopardized the health of patients with disabilities and caused them emotional distress.

## CAUSE OF ACTION
### Violations of Title III of the Americans with Disabilities Act
### 42 U.S.C. §§ 12181-89

25. The foregoing paragraphs are incorporated herein.

26. Johns Hopkins has discriminated against individuals on the basis of disability by failing to provide full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182-89 and its implementing regulation at 28 C.F.R. pt. 36, including by:

   a. denying individuals with disabilities the opportunity to participate in and benefit from the goods, services, facilities, privileges, advantages, and accommodations it provides. 42 U.S.C. § 12182(b)(1)(A)(i); 28 C.F.R. § 36.202(a);

   b. providing individuals with disabilities an unequal opportunity to participate in or

        benefit from the goods, services, facilities, privileges, advantages, and accommodations it provides.  42 U.S.C. § 12182(b)(1)(A)(ii); 28 C.F.R. § 36.202(b);

    c.    failing to make reasonable modifications in its policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii); 28 C.F.R. § 36.302(a).

27.    Johns Hopkins' violations of the ADA amount to a pattern or practice of discrimination and, together with its discrimination against a person or group of persons, raise issues of general public importance.  42 U.S.C. § 12188(b)(1)(B).

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff United States prays that the Court:

A.    Grant judgment in favor of the United States and declare that Johns Hopkins has violated Title III of the ADA, 42 U.S.C. §§ 12181-89, and its implementing regulation, 28 C.F.R. pt. 36, by denying individuals with disabilities an equal opportunity to access and benefit from its goods, services, facilities, privileges, advantages, and accommodations;

B.    Enjoin Johns Hopkins, its officers, agents, employees, and all others in concert or participation with it, from engaging in discrimination against individuals with disabilities, and specifically from failing to comply with Title III of the ADA, 42 U.S.C. §§ 12181-89 and its implementing regulation, 28 C.F.R. pt. 36;

C.    Order Johns Hopkins to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities.  42 U.S.C.

§ 12182(b)(2)(A)(ii); 28 C.F.R. § 36.302(a);

  D. Order Johns Hopkins to revise its policies, practices, and procedures to bring its healthcare services into compliance with Title III of the ADA, 42 U.S.C. §§ 12181-89, and its implementing regulation, 28 C.F.R. pt. 36;

  E. Order Johns Hopkins to provide training on the ADA and on its policies, practices, and procedures to all Johns Hopkins-affiliated individuals who are responsible for determining when a Support Person may accompany a patient or who interface with the public at any of its facilities or otherwise on its behalf (including, but not limited to, officers, agents, employees, associates, contractors, and consultants);

  F. Award compensatory damages, including damages for pain, suffering, and emotional distress, to persons aggrieved by Johns Hopkins' actions, or failures to act, in violation of the ADA for injuries suffered as the result of Johns Hopkins' violations of Title III of the ADA, 42 U.S.C. §§ 12181-89, and its implementing regulation, 28 C.F.R. pt. 36;

  G. Assess a civil penalty against Defendant authorized by 42 U.S.C. § 12188(b)(2)(C), to vindicate the public interest;

  H. Order Johns Hopkins to take all other necessary steps to comply with the ADA; and

  I. Award such other appropriate relief as justice may require, including the United States' costs and disbursements in this action.

## JURY DEMAND

Plaintiff the United States requests a trial by jury on all issues.

Respectfully submitted,

| | |
|---|---|
| EREK L. BARRON<br>United States Attorney | KRISTEN CLARKE<br>Assistant Attorney General<br>Civil Rights Division |
| */s/ Sarah Marquardt*<br>Sarah Marquardt  (No. 17429)<br>Assistant United States Attorney<br>District of Maryland<br>36 S. Charles Street, 4th Floor<br>Baltimore, MD 21201<br>Telephone: 410-209-4801<br>Email: sarah.marquardt@usdoj.gov | REBECCA B. BOND<br>Chief<br>AMANDA MAISELS<br>Deputy Chief<br><br>*/s/ Stephanie M. Berger*<br>STEPHANIE M. BERGER<br>Trial Attorney<br>Disability Rights Section<br>Civil Rights Division<br>United States Department of Justice<br>4 Constitution Square<br>150 M Street, NE<br>Washington, DC 20002<br>Telephone: 202-307-0663<br>Email: stephanie.berger@usdoj.gov<br><br>*Counsel for the United States of America* |