**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| Plaintiff, | |
| v. | Civil Action No.:  1:24-cv-02641-RDB |
| JOHNS HOPKINS HEALTH SYSTEM CORPORATION | |
| Defendant. | |

**CONSENT DECREE**

## I.  INTRODUCTION

1.      The United States of America alleges that Johns Hopkins Health System Corporation ("Johns Hopkins"), through application of its "visitor" restrictions in response to the COVID-19 pandemic ("Visitor Policies"), at times, including from October 2020 through May 2023, excluded or restricted support persons for numerous individuals with certain disabilities at various Johns Hopkins locations when the presence of those support persons was necessary for the individuals' access to equal care.  Support persons/care partners include a family member, personal care assistant, similar disability service provider, or other individual who is knowledgeable about the management or care of the patient with a disability and who is authorized to assist the patient in making healthcare-related decisions ("Support Persons").[1] Although Johns Hopkins has had policies in place to allow Support Persons to accompany, visit, and stay with patients with disabilities during their visits with Johns Hopkins health care

---

[1] However, this Decree does not require Johns Hopkins to allow all individuals with disabilities to be accompanied by a Support Person as a reasonable modification during their interactions with Johns Hopkins, consistent with the Americans with Disabilities Act (ADA).  Nothing in this Decree is intended to restrict Johns Hopkins' ability to provide reasonable modifications or auxiliary aids and services where necessary under the ADA.

providers, the United States alleges that, despite these written policies purporting to allow Support Persons for patients with disabilities, Johns Hopkins staff at times excluded or restricted Support Persons for numerous patients with disabilities at various Johns Hopkins locations.

2.      Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12181-89, as amended, and its implementing regulation, 28 C.F.R. pt. 36, prohibit discrimination on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation by any private entity that owns, leases (or leases to), or operates a place of public accommodation.  42 U.S.C. § 12182(a); 28 C.F.R. § 36.201(a).

3.      As a result of Johns Hopkins' actions described above, the United States alleges that Johns Hopkins failed to provide full and equal enjoyment of its healthcare services to persons with disabilities and that Johns Hopkins' discriminatory actions constitute a pattern or practice of discrimination and constitute discrimination against a group of persons that raises an issue of general public importance.  42 U.S.C. § 12188(b)(1)(B).

4.      Johns Hopkins denies these allegations and denies that it has violated the ADA or any other law.  By entering into this Consent Decree ("Decree"), Johns Hopkins does not admit any allegation made by the United States; nor does Johns Hopkins admit liability, wrongdoing, or violation of the ADA or any other law.  Further, Johns Hopkins states that in the midst of the life-threatening global COVID-19 pandemic, the outstanding employees of Johns Hopkins were on the front line providing excellent medical care, with many risking their own lives every day. Johns Hopkins was and is committed to meeting the needs of its patients and their care partners. Out of more than 3 million patient visits and countless more Johns Hopkins interactions with patients and care partners during the timeframe covered by the two-year-long investigation, it is

Johns Hopkins' position that the government identified a very small number of alleged violations.  While Johns Hopkins denies the government's allegations, and there has been no admission or finding of liability, Johns Hopkins has agreed to an amicable resolution to focus its energy and resources on patient care.

5.      Johns Hopkins asserts that it has a longstanding practice of welcoming visitors and Support Persons for its millions of patients.  In the instances during the COVID-19 pandemic where the need for a Support Person was not timely identified or was erroneously denied or restricted, these were rare departures from Johns Hopkins' policies and procedures, at an exceptional time and under exceptional circumstances.  Johns Hopkins represents that it is committed to accessibility and that before being contacted by the United States about this matter, it had taken steps to ensure Support Persons' presence in its facilities, consistent with its desire to comply with applicable laws and provide the best care for all members of the community.

6.      The United States and Johns Hopkins (collectively, "the Parties") agree that this Decree has been negotiated by the Parties in good faith, that settlement of this matter will avoid prolonged litigation between the Parties, and that this Decree is fair, reasonable, and in the public interest.

7.      Johns Hopkins is a public accommodation within the meaning of Title III of the ADA.  42 U.S.C. §§ 12181(7)(F); 28 C.F.R. §§ 36.104.

8.      The United States alleges that individuals affected by Johns Hopkins' actions are persons with disabilities within the meaning of Title III of the ADA.  These individuals have physical or mental impairments (resulting from conditions including, but not limited to, dementia, Autism Spectrum Disorder (ASD), intellectual and developmental disability (IDD), traumatic brain injury (TBI), and/or mental health disabilities such as anxiety disorders) that

substantially limit one or more major life activities. 42 U.S.C. § 12102; 28 C.F.R. § 36.105.

9.    All individuals whose rights are being vindicated by this Decree are aggrieved persons pursuant to 42 U.S.C. § 12188(b)(2)(B).

10.    The Parties agree that it is in their best interests and in the public interest to voluntarily enter into this Decree.  The Parties therefore agree and stipulate to the Court's entry of this Decree resolving the United States' Complaint against Johns Hopkins.

## II.    PARTIES & JURISDICTION

11.    Plaintiff is the United States of America.

12.    Defendant is the Johns Hopkins Health System Corporation ("Johns Hopkins"),[2] a nonprofit healthcare system headquartered in Baltimore, Maryland.  Johns Hopkins' hospitals and other care facilities affect commerce and are places of public accommodation. 42 U.S.C. § 12181(7)(F); 28 C.F.R. § 36.104.

13.    This Court has jurisdiction over this action under 42 U.S.C. § 12188(b)(1)(B) and 28 U.S.C. §§ 1331 and 1345.

14.    The Court may grant declaratory relief and further necessary or proper relief pursuant to 28 U.S.C. §§ 2201 and 2202 and may grant equitable relief and monetary damages pursuant to 42 U.S.C. § 12188(b)(2).

15.    Venue is proper in this district pursuant to 28 U.S.C. § 1391, because it is where Defendant resides and also where a substantial part of the events or omissions giving rise to the claim occurred.

---

[2] For the purposes of this Decree, Johns Hopkins does not include (1) Johns Hopkins University, which is a separate legal entity from, and not under the direction or control of, the Johns Hopkins Health System and not a party to this Decree; or (2) Johns Hopkins All Children's Hospital, in St. Petersburg, Florida.  Accordingly, the terms in this Decree, including, but not limited to, the policies, training, and other facets of the resolution of these matters discussed herein, do not include, or apply to Johns Hopkins University, Johns Hopkins All Children's Hospital, or their employees.

### III.    ACTIONS TO BE TAKEN BY JOHNS HOPKINS

#### A.    General Nondiscrimination Requirements

16.    As required by Title III of the ADA and its implementing regulation, Johns Hopkins:

a.  Will not discriminate based on disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations Johns Hopkins provides.  42 U.S.C. § 12182(a); 28 C.F.R. § 36.201;

b.  Will not deny individuals with disabilities the opportunity to participate in and benefit from the goods, services, facilities, privileges, advantages, and accommodations Johns Hopkins provides.  42 U.S.C. § 12182(b)(1)(A)(i); 28 C.F.R. § 36.202(a);

c.  Will not provide individuals with disabilities an unequal opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, and accommodations Johns Hopkins provides.  42 U.S.C. § 12182(b)(1)(A)(ii); 28 C.F.R. § 36.202(b);

d.  Will not fail to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless Johns Hopkins can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.  42 U.S.C. § 12182(b)(2)(A)(ii); 28 C.F.R. § 36.302(a).

17.     Nothing in this Decree is intended to limit or deny Johns Hopkins the ability to raise any applicable affirmative defenses otherwise available to it under Title III of the ADA.

## B.    Policies and Procedures

18.     Public-Facing Policies.  Johns Hopkins will update its public-facing policies, practices, and procedures available and applicable to the public ("Public-Facing Policies"), to be applied in all hospitals and other care locations that it operates, ensuring that Support Persons may accompany patients with disabilities during their interactions with Johns Hopkins when such reasonable modification is necessary to afford services to individuals with disabilities, unless Johns Hopkins can demonstrate that making the modification would fundamentally alter the medical care or services, goods, facilities, privileges, advantages, or accommodations provided by Johns Hopkins.  Johns Hopkins will update its Public-Facing Policies as follows:

    a.  Within 30 days of the Effective Date of this Decree, Johns Hopkins will provide draft Public-Facing Policies to the United States for review and approval, not to be unreasonably withheld.

    b.  Within 10 days of receipt of the United States' approval, Johns Hopkins will publish the Public-Facing Policies on all Johns Hopkins webpages accessible to the public containing visitor or Support Person policies for each of its hospitals and other covered care locations.

19.     Internal Policies.  Johns Hopkins will update its internal policies, practices, and procedures (to include revision of accompanying directives, forms, lists, or other documents) to carry out the Public-Facing Policies of the immediately preceding subparagraph ("Internal Policies"), as follows:

    a.  Internal Policies will apply to all Johns Hopkins Health System-affiliated

individuals who interface with the public and for whom Johns Hopkins determines that it is reasonably foreseeable that they have or are likely to have responsibility for determining when a Support Person may or may not accompany a patient (including physicians, nurses, front desk staff, public safety staff, and Guest Services staff) at each of Johns Hopkins' hospitals and other covered care locations. Internal Policies will not apply or be disseminated to individuals who interface with the public but who are not responsible for determining or making statements regarding when a Support Person may or may not accompany a patient.

b.  The Internal Policies will require that all individuals subject to the Internal Policies as described in subparagraph (a) of this Paragraph base decisions about whether a Support Person is needed on all available information, including information provided by the patient and potential Support Person, indications that a person cannot fully participate in their care because of a disability, or information established from prior charting of medical history, such as notations of dementia, intellectual or developmental disability, etc. Further, when a request for a Support Person is made, such request will not be denied solely based on the requestor's failure to use "key words" or "magic language" (such as "Support Person" or "ADA").

c.  Within 30 days of the Effective Date of this Decree, Johns Hopkins will provide draft Internal Policies to the United States for review and approval, not to be unreasonably withheld.

d.  Within 10 days of receipt of the United States' approval, Johns Hopkins will

7

distribute the Internal Policies to all individuals subject to the Internal Policies as

described in subparagraph (a) of this Paragraph via email and by all other

channels normally used for distribution of policy changes.

20.     Notice of Nondiscrimination.  To Johns Hopkins' existing Notice of

Nondiscrimination (currently located at https://www.hopkinsmedicine.org/patient_care/patients-

visitors/patient-rights-records/non-discrimination-notice.html) and to Notices of

Nondiscrimination provided on any of its hospitals' or other patient care locations' websites,

Johns Hopkins will add text noting that complaints about disability-related issues may be made

to the United States Department of Justice, Civil Rights Division, Disability Rights Section, by

visiting https://www.ada.gov/file-a-complaint/.

### C.     Training

21.     Training will be provided pursuant to the following requirements:

a.     Timing and Personnel Scope.  Within 90 days after the United States' approval of

the ADA Training curriculum referenced in Paragraph 21.c., and at least once

annually after that for the Term of this Decree, Johns Hopkins will provide ADA

training to all individuals subject to the Internal Policies as described in Paragraph

19.a. of this Decree ("ADA Training").  The ADA Training may be conducted by

computer or in person and must include an opportunity for trainees to pose

questions during and/or after the conclusion of the training session.  During the

ADA Training, Johns Hopkins will provide an email address for attendees to ask

questions in writing after the conclusion of the training session, and responses to

these inquiries, if any, will be provided within 10 business days by an

individual(s) who understands the Internal Policies and has substantive legal

knowledge of Title III of the ADA and the provisions of this Decree. For persons who must receive ADA Training under this Decree, but who do not receive training by a designated training date required under this Decree because they begin their affiliation with Johns Hopkins subsequent to the last training date, Johns Hopkins will provide training to such persons within 60 days after the individual's hire date in accordance with Johns Hopkins' current new hire training requirements. Persons who must receive ADA Training under this Decree, but who did not receive training by a designated training date required under this Decree because they were on leave, will be required to take the ADA Training within 90 days after the individuals' return from leave.

b. Content. The topics of the ADA Training will address: the reasonable modification requirements for public accommodations under Title III of the ADA as they apply to Johns Hopkins' hospitals and other covered care locations; the content of the Visitor and Support Person policies and procedures; the application of the Visitor and Support Person policies and procedures in a Public Health Emergency; the range of disabilities that may limit individuals' ability to access equal care without a Support Person; the revised and approved Public-Facing Policies and Internal Policies pursuant to Paragraphs 18 and 19; hospital reporting structures for receipt and channeling of ADA-related complaints (such as regarding denials of requests for the presence of a Support Person) or concerns related to patient care; and the channels for Johns Hopkins staff to contact the Johns Hopkins administration with Support Person-related inquiries.

c. Curriculum Approval. Johns Hopkins will send to the United States the proposed

curriculum for the ADA Training within 30 days after the Effective Date of this Decree.  Johns Hopkins' proposal for the content of the ADA Training will be subject to approval by the United States, which will not be unreasonably withheld.  If the United States does not approve the ADA Training curriculum, it will provide comments and edits to guide Johns Hopkins' revisions.  The Parties will work cooperatively to produce a final ADA Training curriculum that the United States approves.

d.  <u>Training Documentation</u>.  Johns Hopkins will maintain a system of tracking those who have and have not completed the ADA Training pursuant to the timing required by this Decree.  For each session of the ADA Training conducted under this Decree (including for each instance of the ADA Training conducted on a non-designated training date pursuant to subparagraph (a) of this Paragraph), Johns Hopkins will maintain attendance logs reflecting the number of individuals subject to the Internal Policies as described in Paragraph 19.a. of this Decree who have not completed the ADA Training, and provide assurances that Johns Hopkins will take reasonable steps to ensure that these employees take the training.

**D.    Monetary Relief - Compensation for Select Individuals Identified by the United States**

22.    Within 20 days of the date on which the United States identifies to Johns Hopkins each Aggrieved Individual, Johns Hopkins will offer to pay a total of one hundred fifty thousand dollars ($150,000) to aggrieved persons (or their legal designee, or their estates, in the event they are now deceased) (each referred to herein as an "Aggrieved Individual").  The United States will identify to Johns Hopkins each Aggrieved Individual and the amount that person will

10

receive.  This amount will not be subject to withholding deductions, and Johns Hopkins will issue an IRS Form 1099 to each Aggrieved Individual for these amounts.

23.     Johns Hopkins will send each identified Aggrieved Individual a copy of the Complaint and this signed Decree, the Release of Claims Form attached as Exhibit 1, and a Notice Letter offering payment, attached as Exhibit 2.  Johns Hopkins will send the United States copies of the offer of payment and the Release of Claims Form when they are sent to each Aggrieved Individual.

24.     In order to accept the relief offered by Johns Hopkins, each Aggrieved Individual must execute and return the Release of Claims (Exhibit 1) to Johns Hopkins within 30 days of receiving the Notice Letter (Exhibit 2).

25.     For each Aggrieved Individual who accepts the relief as described in Paragraphs 22-24 above, Johns Hopkins must pay the total monetary amount within 30 days of receiving that Aggrieved Individual's signed Release of Claims Form.  Within seven days of paying each Aggrieved Individual, Johns Hopkins will send the United States proof of payment and a copy of each Aggrieved Individual's signed Release of Claims Form.

26.     There will be no reversion to Johns Hopkins of any of the $150,000; rather, the full amount will be paid to Aggrieved Individuals.  The United States will direct Johns Hopkins to reallocate funds among the Aggrieved Individuals identified should any of the Aggrieved Individuals fail to submit the Release of Claims or decline payment.

### E.     Recordkeeping and Reporting

27.     <u>Regular Reports</u>.  Johns Hopkins shall report via email to the United States on its compliance with its obligations under this Decree starting 90 days after the Effective Date, and thereafter every six months for the Term of the Decree, with a final report due at the end of the

Term of the Decree.  The reports will detail Johns Hopkins' compliance with this Decree, including efforts undertaken pursuant to this Decree on which Johns Hopkins has not previously reported.  Each report must include all information regarding training status pursuant to Paragraph 21.d., above.  The reports shall also include complaints made to Johns Hopkins, since the prior report, regarding requests for Support Persons, when the complaint is based on a disability within the meaning of Title III of the ADA or in circumstances in which Johns Hopkins should have known at the time of the incident that it was reasonably likely that the patient involved had a disability within the meaning of Title III of the ADA, together with an explanation of each action Johns Hopkins has taken in response to each such complaint (or if no action is taken in response to a particular complaint, Johns Hopkins shall include an explanation of why no action was taken).

## IV.    OTHER PROVISIONS

28.    <u>Effective Date</u>.  This Decree will become effective as of the date that it is entered by the Court.

29.    <u>Term</u>.  The duration of this Decree will be two years from the Effective Date.

30.    <u>Delivery of Information to the Parties</u>.  All reports and materials required under this Decree to be delivered to the United States will be delivered to the undersigned counsel via electronic mail at stephanie.berger@usdoj.gov and sarah.marquardt@usdoj.gov, or other persons subsequently specified by the United States.  Unless otherwise specified in this Decree, all communications from the United States to Johns Hopkins should be directed via electronic mail to sfrenkil@milesstockbridge.com and ehall@milesstockbridge.com and/or any other persons subsequently specified by Johns Hopkins or its counsel.  Any party may update mailing or electronic addresses to all other parties without requiring any changes to this Decree.

31. <u>Enforcement and Dispute Resolution</u>.  The United States may review Johns Hopkins' compliance with this Decree at any time and will have the right to request information or a copy of any non-privileged documents necessary to monitor Johns Hopkins' compliance with this Decree.

    a. <u>Notification in Writing</u>.  Counsel for the United States will promptly notify counsel for Johns Hopkins in writing if the United States develops concerns about possible non-compliance with the terms of this Decree, or otherwise disagrees with Johns Hopkins regarding the terms, processes, or obligations set forth in this Decree.  Counsel for any Party may also notify counsel for another Party that they wish to meet and confer in good faith regarding any aspects of implementing this Decree.

    b. <u>Meet and Confer</u>.  Unless otherwise agreed to by the Parties in writing, the Parties agree to meet and confer in good faith (such meeting may occur virtually) within 15 business days after receipt of a written notification under Paragraph 31.a. of this Decree or as otherwise agreed to by the Parties.

    c. <u>Application for Further Relief</u>.  If the meeting required by subparagraph (b) of this Decree does not lead to a resolution satisfactory to the United States, then, with at least five days' written notice to Johns Hopkins pursuant to subparagraph (a), the United States may seek enforcement of this Decree in the United States District Court for the District of Maryland.  In such an event, the United States may move the Court to impose any remedy authorized by law or equity to address Johns Hopkins' alleged violation or failure to perform.

32. <u>Non-Waiver</u>.  Failure by the United States to enforce any provision or deadline of

this Decree will not be construed as a waiver of its right to enforce any provision or deadline of the Decree.

33.     <u>Costs and Fees</u>. Each of the Parties will bear its own costs and attorneys' fees associated with this matter.

34.     <u>Titles</u>.  Titles and other headings contained in this Decree are included only for ease of reference and will have no substantive effect.

35.     <u>Timelines</u>.  Any timelines for performance fixed by or under this Decree (except for the Term) may be modified by mutual written agreement of the Parties.  As to any deadline specified in this Decree other than the Term, if Johns Hopkins cannot meet the deadline specified, then Johns Hopkins shall notify the United States at least 14 days before the deadline of its inability to meet the deadline and the reasons why, and shall request an extension of time to a specific date.  The United States shall be reasonable in agreeing to an extension.

36.     <u>Severability</u>.  If any term of this Decree is determined by any court to be unenforceable, the other terms of this Decree will nonetheless remain in full force and effect.

37.     <u>Binding Nature of Agreement</u>.  This Decree will be binding on Johns Hopkins and its successors (as well as the agents, contractors, and employees of Johns Hopkins acting on its behalf).

38.     <u>Authority</u>.  The signatories represent that they have the authority to bind the respective parties identified below to the terms of this Decree, and Johns Hopkins represents that no other party is a necessary signatory to this Decree to carry out its obligations.

39.     <u>Entire Agreement</u>.  This Decree constitutes the entire agreement between the Parties on the matters raised here and no other statement or promise, written or oral, made by any party or agents of any party, that is not contained in this written Decree (other than adjustments

to Timelines pursuant to Paragraph 35) will be enforceable.

40.     Consideration.  In consideration of the terms of this Decree as set forth above, the United States will close its investigation of DJ No. 202-35-457,[3] and agrees to refrain from filing a new civil suit under Title III as a result of the investigation leading to this Decree and to refrain from seeking other judicial relief as a result of the investigation leading to this Decree except as provided in this Paragraph and in Paragraphs 31 (Enforcement and Dispute Resolution) and 42 (Other Violations).  The United States releases Johns Hopkins from, and will take no further action against, Johns Hopkins for any claims, allegations, or lawsuits arising out of the facts alleged in the Complaint through the Effective Date.  The Department of Justice does not otherwise intend to enforce Title III against Johns Hopkins based on Johns Hopkins' application of Visitor Policies that resulted in the exclusion of Support Persons for any incidents up to the Effective Date.

41.     Agreed Resolution.  The Parties agree to the entry of this Decree without trial or further adjudication of any issues of fact or law raised in the United States' Complaint.  By entering into this Decree, Johns Hopkins is not admitting any of the factual allegations or legal contentions raised in the United States' Complaint, nor may this Decree be asserted to have preclusive effect against Johns Hopkins in any litigation other than litigation by the United States to enforce the terms of this Decree.

42.     Other Violations.  This Decree does not remedy any other potential violations of the ADA or any other law that is not specifically addressed here, nor does it affect Johns Hopkins' continuing responsibility to comply with the ADA.

43.     Retention of Jurisdiction.  For the duration of the Decree, the Court will retain

---

[3] The United States has administratively replaced DJ No. 204-35-305 previously used in this matter with DJ No. 202-35-457.

15

jurisdiction over this Decree to implement the provided relief, and to resolve any disputes or enter any orders that may be necessary to implement this relief.

By their signatures below, the Parties respectfully consent to the execution of all aspects of this Decree.

*(Signatures appear on the following pages.)*

16

**FOR THE UNITED STATES OF AMERICA:**

DATED: <u>9/12/2024</u>

| | |
|---|---|
| EREK L. BARRON<br>United States Attorney | KRISTEN CLARKE<br>Assistant Attorney General<br>Civil Rights Division |

<u>*/s/ Sarah Marquardt*</u>
Sarah Marquardt  (No. 17429)
Assistant United States Attorney
District of Maryland
36 S. Charles Street, 4th Floor
Baltimore, MD 21201
Telephone:  410-209-4801
Email:  sarah.marquardt@usdoj.gov

REBECCA B. BOND
Chief
AMANDA MAISELS
Deputy Chief

<u>*/s/ Stephanie Berger*</u>
STEPHANIE M. BERGER
Trial Attorney
Disability Rights Section
Civil Rights Division
United States Department of Justice
4 Constitution Square
150 M Street, NE
Washington, DC 20002
Telephone: 202-307-0663
Email:  stephanie.berger@usdoj.gov

*Counsel for the United States of America*

**FOR JOHNS HOPKINS HEALTH SYSTEM CORPORATION:**


DATED: <u>September 12, 2024</u>

<u> /s/ Steven D. Frenkil</u>
STEVEN D. FRENKIL (No. 00087)
Miles & Stockbridge P.C.
100 Light Street, 7<u>th</u> Floor
Baltimore, MD 21202
Telephone: (410) 727-6464
Email: sfrenkil@milesstockbridge.com


<u> /s/ Elisabeth K. Hall</u>
ELISABETH K. HALL (No. 18734)
Miles & Stockbridge P.C.
100 Light Street, 7<u>th</u> Floor
Baltimore, MD 21202
Telephone: (410) 727-6464
Email: ehall@milesstockbridge.com

*Counsel for Johns Hopkins Health System Corporation*

It is so ORDERED this ____19th____ day of ____December_____, 2024.


_____/s/ - Richard D. Bennett_____
United States Senior District Judge

# EXHIBIT 1

# RELEASE OF CLAIMS

Re:        Agreement between the United States and Johns Hopkins
United States v. Johns Hopkins Health System Corporation
Civil Action No. XX-CV-XXXXX (D. Md.)
DJ No. 202-35-457

For and in consideration of the relief offered to me by the Johns Hopkins Health System Corporation ("Johns Hopkins") pursuant to the Consent Decree between the United States of America and Johns Hopkins regarding *United States v. Johns Hopkins Health System Corporation*, Civil Action No. XX-CV-XXXXX (D. Md.), arising out of Department of Justice Investigation No. 202-35-457 (the "Decree"):

I, _____, on behalf of myself and on behalf of my grantees, agents, representatives, heirs, devisees, trustees, assigns, and assignors ("Releasee"), hereby release and forever discharge the Johns Hopkins Health System Corporation, its parents, subsidiaries, affiliates, and entities and their current, past, and future officials, trustees, directors, officers, employees, insurers, predecessors, successors, assigns, attorneys, and agents, of and from any Americans with Disabilities Act-related legal or equitable claims, and any claims under Title III of the Americans with Disabilities Act, or any other federal, state, or local law or common law, or regulation, arising out of the facts identified or allegations made in Paragraph 1 of this Consent Decree, including but not limited to any claims regarding the alleged exclusion or restriction of support persons or care partners for individuals with disabilities from October 9, 2020 to May 11, 2023. Excluded from this Release are any rights and claims that cannot be waived by law.

This Release constitutes the entire agreement between myself and Johns Hopkins, without exception or exclusion.

I acknowledge and agree that I am solely responsible for payment of any applicable federal, state, or local taxes and/or associated expenses due as a result of the settlement payment I receive pursuant to the Decree. This Release constitutes the entire agreement between Johns Hopkins and me, without exception or exclusion.

I acknowledge that a copy of the Complaint and Decree have been made available to me. By signing this Release, I acknowledge that I have been provided the opportunity to review the Complaint, Decree, and this Release with an attorney of my choosing.

      I HAVE READ THIS RELEASE AND UNDERSTAND ITS CONTENTS AND I EXECUTE THIS RELEASE OF MY OWN FREE ACT AND DEED.

Date:_____

_____
Signature of Releasee (or Person Legally
Acting on Releasee's Behalf)


Full Mailing Address:
_____
_____
_____

Email: _____

Phone(s): _____

# EXHIBIT 2

BY OVERNIGHT MAIL

[INSERT NAME AND ADDRESS]

> Re:    Agreement Between the United States and the Johns Hopkins Health
> System Corporation
> Civil Action No. XX-CV-XXXXX (D. Md.)
> DJ No. 202-35-457

Dear [Insert Name]:

The United States Department of Justice and the Johns Hopkins Health System Corporation ("Johns Hopkins") have entered into a Consent Decree ("Decree") to resolve the above-referenced civil action brought by the United States. Copies of the Consent Decree and corresponding Complaint are enclosed.

You are receiving this communication because within the past several years you or a family member received care at a Johns Hopkins location and you contacted Johns Hopkins about a concern or an experience you had with us. Johns Hopkins has entered into the enclosed Decree with the U.S. Department of Justice to resolve an investigation brought under the Americans with Disabilities Act (ADA). The Decree resolves alleged violations of the ADA involving Johns Hopkins' restrictions on Support Persons from October 9, 2020 to May 11, 2023. These alleged violations occurred when Johns Hopkins restricted or did not allow a Support Person (such as a family member, companion, or aide) to accompany individuals with certain disabilities who could not equally access Johns Hopkins' care without help from their Support Person. Johns Hopkins denies these allegations but has agreed to settle this matter with the Department.

Under the Decree, the Department has determined the amount to be offered to individuals to resolve their claims relating to these issues. Johns Hopkins is offering you a payment of $[Insert Amount], the amount determined by the Department.

In order to accept Johns Hopkins' offer, you must sign the enclosed Release of Claims Form and return it within 30 days of your receipt of this letter. You must also complete the enclosed IRS Form W-9. You may return both forms by email to [Insert Johns Hopkins email], or by overnight carrier to:

> [Name]
> [Title]
> [Address]

This monetary sum is offered to you on the following condition: if you accept it, you will have to release Johns Hopkins from all claims you may have against it arising out of the facts alleged in *United States v. Johns Hopkins Health System Corporation*, Civil Action No. [Insert] filed in the U.S. District Court for the District of Maryland, by signing the attached Release of Claims Form. Within 30 days of receipt of your release, Johns Hopkins will pay you $[Insert

amount].  The payment will not be subject to withholding deductions, and Johns Hopkins will send you an IRS Form 1099 for the amount paid.

If you have any questions about this letter or the Decree, you may contact me at [Insert Johns Hopkins Email] or you may contact Stephanie Berger (stephanie.berger@usdoj.gov) at the U.S. Department of Justice's Civil Rights Division.

Sincerely,

[Johns Hopkins signature]

Enclosures:
Complaint
Copy of Executed Consent Decree
Release of Claims Form

cc:    Stephanie Berger, U.S. Department of Justice, Civil Rights Division
       Sarah Marquardt, U.S. Attorney's Office, District of Maryland